208 So.2d 755 (1968)
Edgar LOVE
v.
STATE of Mississippi.
No. 44686.
Supreme Court of Mississippi.
April 1, 1968.
R. Jess Brown, Alvin Bronstein, Jackson, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice:
Appellant, Edgar Love, was jointly indicted with R.B. Hogan in the Circuit Court of Humphreys County, Mississippi, on a charge of stealing and carrying away twelve Case cultivator feet with sweeps attached of the value of $10 each and of the total value of $120, the personal property of Robert Edwards.
Only Love was tried for this offense of grand larceny. He was convicted of petit larceny and sentenced to imprisonment in *756 the county jail for four months. He prosecutes this appeal and urges, among other grounds assigned for reversal of the judgment of conviction, that the trial court erred in denying his motion for a directed verdict. He also contends that the verdict is not supported by sufficient evidence.
In Jackson v. State, 211 Miss. 828, 52 So.2d 914 (1951), this Court set forth the essential elements of the offense of larceny in a definition taken from 52 C.J.S. Larceny § 1, at 779 (1947):

"`Larceny, as distinguished from other offenses, is the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner; * * *'" (Emphasis added)
This definition of larceny was reiterated in Crouse v. State, 229 Miss. 15, 89 So.2d 919 (1956).
There were only two witnesses who testified on the essential elements of larceny. Robert Edwards, the owner of the cultivator feet, admitted that he had no personal knowledge of the manner in which the feet were lost or of any involvement of the appellant in said loss. However, he did state that he had owned an uncertain number of such feet prior to July 1966 and that he had discovered that an uncertain number of said feet were missing from the shed where he kept them when he checked the shed sometime between July 1 and July 10, 1966. None of his employees knew anything about the loss at the time, but about seven months later, one of them. A.J. Hogan, implicated appellant, and Edwards notified the authorities for the first time on February 9, 1967, that the feet were missing and charged appellant with the theft.
A.J. Hogan, the only other witness as to guilt, testified that on a morning in late June, early July, or late July, 1966, he and another employee saw his brother, R.B. Hogan, who was also employed by Edwards, and appellant putting feet in the trunk of his brother's 1956 Mercury automobile. He did not know where the cultivator feet came from, did not see appellant get into the car, and did not see the car move. He stated that the door of the shed where the cultivator feet were usually kept was closed at the time. R.B. Hogan continued to work for Robert Edwards, and when he left for Illinois a short time before the trial, he took his 1956 Mercury automobile to Edwards' home and left it there, where it was still parked at the time of the trial.
The appellant, who was employed as a tractor driver by Edwards, worked for him for about six months and was fired around the end of June, 1966, but was allegedly working for Edwards when the feet were discovered missing, about July 6, 1966. The shed where the cultivator feet were usually kept, had no lights or watchman, was kept locked, and was located, according to A.J. Hogan, about ten feet from a public road and, according to Edwards, the owner, was located about 400 yards from a public road. Appellant had no key to the shed, but used cultivator feet from time to time in his work for Edwards. There was no other evidence tending to connect appellant with the missing cultivator feet. Although appellant was charged with grand larceny, the trial court instructed the jury that on the proof offered they could not find the defendant guilty of a crime greater than petit larceny.
All of the evidence as to the felonious intent of the appellant was purely circumstantial. Only one witness, A.J. Hogan, testified that he saw the appellant moving the feet about the time that the feet were discovered missing, which fact A.J. Hogan reported to the owner about seven months later, and from that fact, the jury is asked to infer that appellant had the *757 felonious intent to permanently deprive Edwards of his property.
The proper burden of proof, when evidence is wholly circumstantial as to an essential element of the offense, is that such evidence must exclude every reasonable hypothesis other than that of guilt. Westbrook v. State, 202 Miss. 426, 32 So.2d 251 (1947). There are three exceptions to this rule as to the burden of proof, but none of the three was present in this case. Another essential element, the asportation or carrying away of the property, was not proved. There simply was no accurate, definite, adequate or substantial evidence of any of the essential elements of the offense of larceny. The burden of proof was not met by the State and the trial court should have directed a verdict for the defendant. The judgment will, therefore, be reversed and the defendant discharged.
Judgment reversed and defendant discharged.
ETHRIDGE, C.J., and RODGERS, PATTERSON, and SMITH, JJ., concur.